PASSAIC COUNTY PROBATION OFFICERS' ASSOCIATION, PLAINTIFF, v. THE COUNTY OF PASSAIC, A BODY POLITIC OF THE STATE OF NEW JERSEY; ALPHONSE PEZZUTI, CHIEF PROBATION OFFICER OF THE PASSAIC COUNTY PROBATION DEPARTMENT; RONALD PARKER, PASSAIC COUNTY COURT ADMINISTRATOR; AND THE JUDGES OF THE COUNTY OF PASSAIC COUNTY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 5, 1975.

*Mr. Lawrence A. Whipple, Jr.* for plaintiff (*Messrs. Zazzali & Zazzali,* attorneys).

*Mr. Michael S. Bokar,* Deputy Attorney General for the defendants (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

GELMAN, J. S. C.   Plaintiff Association has been voluntarily recognized by the judges of the Passaic County Court (the judges) as the exclusive negotiating representative of the probation officers* employed by the County of Passaic. This recognition is embodied in the current collective negotiation agreement between the Association and the judges.

Under date of December 16, 1974 the chief probation officer of Passaic County issued a directive to take effect January 6, 1975. The subject of the directive is "Change in Office Hours," and in pertinent part it reads as follows:

This is notice that, as approved by the County Court Judges and effective Monday, January 6, 1974, the daily office hours for probation officers shall be 9:00 A.M. to 4:30 P.M., from Monday through Friday, except that one day on alternate weeks, or a variation thereof, each officer shall remain on duty for two and one half hours beyond the normal closing time of 4:30 P.M. These extended hours will be determined by the needs of the division to which the officer is assigned or the particular duties of the individual.

For at least six years prior to the issuance of the directive the "office hours" of the probation officers were from 9 A.M. to 4 P.M. On October 30, 1974 the Passaic County judges held a meeting to discuss "the present normal working hours

*Excluding certain categories of probation officers.

of probation officers." At the meeting the judges passed a resolution reciting "that the normal working hours of probation officers be expanded to 9:00 A.M. to 4:30 P.M." The reasons given for this action were threefold: (1) the December 1971 increase in court hours by one-half hour a day had enlarged the hours of other court personnel and a similar increase in the probation officers' working hours would "improve their service to the judiciary"; (2) the increase in duties and caseloads of the probation officers required an enlargement of the work day to make possible greater productivity, and (3) probation officers in Passaic County worked fewer hours than their counterparts in comparable counties.

The directive was issued without prior consultation or negotiation with the Association. The Association thereupon instituted this action to enjoin its enforcement on the ground that it constituted a change in the terms and conditions of the probation officers' employment which must be negotiated with the Association before it can be put into effect. *N. J. S. A.* 34:13A–5.3.

By way of preface it should be noted that although this matter was heard after the effective date of *L.* 1974, *c.* 123, disposition has been made under the law in existence at the time the directive was issued and the complaint filed, *i. e.*, *L.* 1968, *c.* 303; *N. J. S. A.* 34:13A–5.1 *et seq.* Neither party has urged that the recently enacted revision of *Chapter* 303 is applicable to this controversy.

Before examining the contentions of the parties it is necessary to refer to certain aspects of the relationship of the probation officers to the judiciary. Probation officers function as an enforcement arm of the judicial system. *Godfrey v. McGann,* 37 *N. J.* 28 (1962). In criminal matters they conduct investigations and submit presentence reports and recommendations, supervise probationary sentences and collect fines; on the civil side they likewise conduct investigations and submit reports in a variety of matters at the direction of the judges, collect and enforce support orders and supervise judgments entered by the courts. *N. J. S. A.*

2A:168–11, 13. In sum, they perform services for the judiciary essential to the fair and efficient administration of justice.

The Legislature has delegated to the County Court judges authority to appoint probation officers, to make necessary rules and regulations with respect to the performance of their duties, and to fix their salaries and expenses. *N. J. S. A.* 2A:168–5, 7 and 8. The judges are also authorized to recognize the chosen representative of the probation officers for purposes of collective negotiation under the New Jersey Employer-Employee Relations Act. *In re Salaries, Prob. Off. Bergen County,* 58 *N. J.* 422, 424 (1971).

Since 1959 the Administrative Office of the Courts has taken an active role in furnishing consulting services to the judges in the field of probation with the objective of promoting a more efficient and systematic administration of probation services throughout the State. The 1961 report of the Administrative Director of the Courts contained recommendations on such matters as beginning salaries, staff needs and case loads, grievance procedures, and extra-curricular employment. In July 1962 the Administrative Director notified the judges that henceforth requests for Civil Service examinations for the position of probation officers should specify that the position did not call for a fixed schedule of hours. He said:

> * * * probation officers must be expected to work, within reason, as many hours as may be necessary to accomplish their duties. A specific limitation on or designation of the hours to be worked, particularly if it is less than that worked by many persons in private professional employment, is not consistent either with the nature of the duties to be performed or with the efforts that have and are being made to increase salary levels.

On August 28, 1972 the Administrative Director issued a memorandum to judges and chief probation officers setting forth the position of the Supreme Court with respect to the conduct of negotiations with probation officers under the New Jersey Employer-Employee Relations Act. Among

other matters the Administrative Director noted that "Fixed Hours of Work or Overtime Pay" were nonnegotiable items as a matter of Supreme Court policy. Although periodic demands on the part of probation officers to negotiate fixed hours of employment have been made, the Administrative Officer of the Courts has adhered to this stated policy and no contract has been negotiated containing such a provision. The probation officers are deemed to be available to the courts as required to carry out the statutory and judicial duties assigned to them.

Finally, reference should be made to $R.$ 1:34–4, which provides:

Probation officers shall be appointed in accordance with standards fixed by the Supreme Court. All probation officers shall be responsible to and under the supervision of the Chief Probation Officer of the county who shall be responsible to and under the supervision of the judge of the county court or, in counties having more than one judge of the county court, the county court judge designated by the Assignment Judge to be responsible for the administration of the probation department in the county in accordance with applicable statutes, rules of the Supreme Court, and directives of the Chief Justice, the Administrative Director of the Courts, and the Assignment Judge of the County.

As set forth in the foregoing rule, the administration of the county probation officers is subject, among other things, to "applicable * * * directives of the Chief Justice [and] the Administrative Director of the Courts * * *." The administrative authority of the Chief Justice and the Administrative Director referred to in $R.$ 1:34–4 is set forth in $N. J.$ $Const.$ (1947), Art. VI, § II, par. 3, which provides that "[t]he Supreme Court shall make rules governing the administration of all courts in the State. * * *" In addition, Art. VI, § VII, par. 1 provides that "[t]he Chief Justice of the Supreme Court shall be the administrative head of all the courts in the State. He shall appoint an administrative Director to serve at his pleasure."

From the foregoing recital it is evident that (1) probation officers are statutory employees of the County Court

judges; (2) as employees of the judiciary the terms and conditions of their employment are subject to the constitutional rule-making powers of the Supreme Court acting through the Chief Justice and the Administrative Director, and (3) the Supreme Court and the Administrative Director have determined, as a matter of policy, that probation officers shall have no fixed hours of employment but shall at all times be available to the judiciary to perform the duties assigned to them.

The current agreement between the Association and the judges contains no reference to hours of employment or "office hours" to be observed by probation officers. It may fairly be inferred from this omission that both parties recognized the subject matter of "hours" was not negotiable in accordance with the directives issued by the Administrative Director. Indeed, the Association acknowledged at oral argument that the working hours of probation officers may be diminished or enlarged by the judges either as a matter of contract right or in the exercise of the Supreme Court's constitutional power to administer the operation of the judicial system and its personnel.

Plaintiff contends, however, that the action of the judges in extending the "office hours" of probation officers an additional 2½ hours a week without prior negotiation contravenes the Employer-Employee Relations Act, which provides that "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative [of public employees] before they are established." *N. J. S. A.* 34:13A–5.3; *Englewood Bd. of Ed. v. Englewood Teachers Ass'n,* 64 *N. J.* 1, 7–8 (1973); see *Essex Council #1, N. J. Civ. Serv. Ass'n v. Gibson,* 118 *N. J. Super.* 583, 585 (App. Div. 1972.)

Plaintiff relies principally on *Pros., Det., Essex Cty. v. Hudson Bd. Freeholders,* 130 *N. J. Super.* 30 (App. Div. 1974), certif. den. 66 *N. J.* 330 (1974). There, as a result of the Supreme Court's directive of December 14, 1971 lengthening the court day in all trial courts, the Essex County Pros-

ecutor extended the work day of his employees without additional compensation, and the assignment judge of Hudson County ordered a similar extension for the county clerks. The Civil Service Commission held that the directives constituted a "reduction" without good cause, in violation of the Civil Service Law. *N. J. S. A.* 11:22–38. In reversing the decision of the Civil Service Commission, the Appellate Division, in language equally applicable to the present case, noted that

> In contrast to *Essex Council #1, N. J. Civ. Serv. Ass'n* [118 *N. J. Super.* 583 (App. Div. 1972)], the extension of hours in the cases before us was not motivated by an arbitrary decision by the appointing authorities but was required to further the interests of judicial efficiency as reflected by the Chief Justice's directive issued pursuant to his constitutional responsibility. [130 *N. J. Super.* at 40]

The court added: "The increase in hours is a hazard to which all personnel involved in administering the judicial system are subject." *Id.* at 44. The court further held that because the detectives and court clerks were organized groups, the Civil Service Commission lacked jurisdiction to hear their grievances, which should have been processed in accordance with the provisions of the Employer-Employee Relations Act. In that connection the court observed:

> Under that act [the Employer-Employee Relations Act] the terms and conditions of employment, such as compensation, are mandatorily negotiable. The act reflects a state policy to promote voluntary resolutions of public employer-employee disputes over terms and conditions of employment. If the employees form an organization recognized under the act for the purpose of collectively negotiating these terms with the public employer, their remedy in a case such as this is to negotiate the matter of payment for longer hours with the respective boards of freeholders. In the event the latter fail to negotiate in good faith, the organization may seek the aid of the courts to require them to do so. If an impasse is reached, either party may seek the aid of the Public Employment Relations Commission to assist in effecting a voluntary resolution. [*Id.* at 45]

Plaintiff argues on the basis of the language quoted above that defendants violated the Employer-Employee Relations

Act in failing to negotiate with plaintiff Association prior to implementing the change in work hours. As noted earlier, however, the contract between the Association and the judges, in accordance with the long-standing policy enunciated by the Supreme Court, contains no provision with respect to hours of work, and it is an implied term of the agreement that probation officers are "to work, within reason, as many hours as may be necessary to accomplish their duties."

Plaintiff's argument that the judges' directive represents a change in a "work rule" is without foundation, for the same reason that the Supreme Court's December 14, 1971 directive lengthening the court day of trial judges cannot be said to establish "fixed" work hours for the judiciary. In both cases, "office hours" or "court hours" constitute only one part of the inherent time requirements of the position.

It is concluded, therefore, that the directive in question here does not modify an existing "work rule" within the meaning of *N. J. S. A.* 34:13A–5.3, but is a reasonable exercise of the judges' administrative and supervisory authority over probation officers conferred by *N. J. S. A.* 2A:168–7, and as such is fully consistent with the contractual agreement of the parties. Furthermore, unlike plaintiffs in the *Hudson Board of Freeholders* case, who were employees of the freeholders, probation officers are state judicial employees whose employment is subject to the explicit and long-standing directives of the Supreme Court which make clear that probation officers are expected to work as many hours, within reason, as may be necessary to perform their duties and that collective negotiations with respect to fixed hours of work or overtime are forbidden.

For the foregoing reasons judgment will be entered dismissing the complaint without costs.